Felver A. **ROWELL**, Jr. and Betty C. Rowell, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 88–2840.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 4, 1989.

Decided Sept. 5, 1989.

E.J. Ball, Fayetteville, Ark., for appellants.

Doris J. Coles, for appellee.

Before McMILLIAN, JOHN R. * GIBSON, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Felver A. Rowell (Rowell) and his wife Betty appeal from the order of the United States Tax Court[1] sustaining deficiencies in federal income tax assessed by the Commissioner of Internal Revenue for the tax years 1977, 1978, and 1979. The Rowells challenge the Tax Court's findings that they failed to report substantial income from a tax return preparation business, and that they improperly claimed business expense deductions for entertaining associates. Rowell, an attorney, also attacks the Commissioner's assessment of penalties against him individually for fraudulent evasion of income tax. We affirm.

During the tax years in issue, the Rowells resided in Morrilton, Arkansas, where Rowell maintained a law office as a sole practitioner. He also served as a deputy prosecuting attorney for Conway County, Arkansas, and operated a tax return preparation business out of his law office. Most of the tax returns were prepared by Rowell's office manager, Karen Porterfield. The Rowells also derived income from rents, interests, dividends and the sale of stock.

Rowell calculated income received during the tax years at issue based on bank records of his deposits. He simply took the total of deposits made to his business account during the year, added any income not deposited, deducted claimed business expenses, and reported the remainder on his tax forms as net profit. After an extended examination of the Rowells' records, the Commissioner assessed deficiencies against them of $34,449.88 for 1977, $41,450.38 for 1978, and $26,879.19 for 1979. Additions to tax for fraud under I.R.C. § 6653(b)[2] were assessed in the amounts of $17,224.94, $20,725.19 and $13,318.79 for the respective years against Rowell individually. The Rowells petitioned the Tax Court for a redetermination of their taxes.

In a 46–page memorandum opinion, the court sustained the Commissioner's disallowance of Rowell's reductions in gross income for various "client settlements" claimed to have been remitted to clients; personal bills paid; travel expenses; bad check losses; entertainment expenses related to annual "Canadian Business Trip[s]"; office repairs; a second telephone line to

---

**1.** The Honorable Jules G. Korner, III, Judge.

**2.** All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue.

the Rowells' home (one line was under the Rowells' names, the other was in their daughters' names); automobile expenses for various vehicles used in the solo law practice; insurance and other expenses for the Rowells' cabin, motor home, and boats; depreciation deductions; Keogh plan payment; and interest expenses. The court also agreed with the Commissioner that Rowell failed to report more than $20,000 per year he collected in fees for preparation of tax returns. The court sustained deficiencies of $33,785.14 (1977), $41,183.15 (1978), and $26,393.05 (1979). Fraud penalties for an amount equal to half of each year's deficiency were assessed against Rowell, individually. This appeal followed.

We note that the Internal Revenue Service agent who examined Rowell's records testified in Tax Court that she found documentation of income from the tax return preparation fees inadequate. Accordingly, she reconstructed this income on the basis of information available to her. Rowell had provided checks drawn on the business account for client settlements and court costs. The agent compiled a list of Rowell's law clients based on the names noted on these checks. She then compared this list with deposit tickets listing the payor of checks deposited in Rowell's business account. In this manner, the agent determined that twenty-five checks that were apparently not from law clients were deposited in 1977. The agent calculated an average amount payable of $118.05 for the unidentified checks. She similarly calculated the average amount of unidentified checks at $123.03 for 1978 and $132.92 for 1979.

Contacting an IRS service center, the agent determined that 236 returns in 1978 and 228 returns in 1979 bore Rowell's social security number as the preparer's number. Because the number of returns filed in 1977 was not available, the agent estimated it at 208. She then multiplied the number of returns prepared each year times the average amount of the unidentified checks for that year. After deducting the amount of the unidentified checks, which had been reported, she estimated

that Rowell had unreported tax return preparation fees of $21,594 in 1977, $26,691 in 1978, and $24,339 in 1979. The Tax Court sustained the method of calculating income, noting that in the absence of sufficient records the Commissioner may use any method of computation which in his opinion clearly reflects the taxpayer's income. *See* I.R.C. § 446(b).

■ This court must accept the Commissioner's method of reconstructing income so long as it is rationally based. *Denison v. Commissioner*, 689 F.2d 771, 773 (8th Cir.1982) (per curiam). Courts permit the Commissioner broad discretion in this area, requiring only that the estimate be rational "in logic and in light of normal business experience." 2 J. Mertens, *Law of Federal Income Taxation* § 12.108, at 443 (1989); *see also Bradford v. Commissioner*, 796 F.2d 303, 306–07 (9th Cir.1986) (taxpayer who derived income from smuggling laetrile into the country failed to show that reconstruction of income based on a three-month surveillance of sales was not rationally based); *Keogh v. Commissioner*, 713 F.2d 496, 501–02 (9th Cir.1983) (casino worker's underreported tip income estimated based on diary of non-party co-worker); *Anson v. Commissioner*, 328 F.2d 703, 707 (10th Cir.1964) (where examination of charge slips showed average tip was 13.75%, Commissioner appropriately reconstructed income based on 10% of waitress's share of sales); *Agnellino v. Commissioner*, 302 F.2d 797, 799 (3d Cir.1962) (reconstruction of income based on number of fresh bed sheets rented by motel in taxable year was rational).

■ We acknowledge that the average of tax return fees paid by check may be higher than the average of all fees for tax work. Rowell, however, failed to keep records of amounts actually received. Because the number of returns prepared is not seriously disputed, the Commissioner was required only to attach a rationally-calculated value to the average return prepared. Nor is the Rowells' argument that the agent should have checked her calculations by another method convincing. As the Ninth Circuit explained in *Bradford,*

Arithmetic precision was originally and exclusively in [the taxpayer's] hands, and he had a statutory duty to provide it.... [H]aving defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should he be overly chagrined at the Tax Court's reluctance to credit every word of his negative wails.

796 F.2d at 306 (quoting *Webb v. Commissioner*, 394 F.2d 366, 373 (5th Cir.1968)). We believe that the Commissioner's method of reconstruction was rational and the Tax Court determination on this issue was supported by the evidence.

 The court assumed, without deciding, that the expenses for entertaining associates on fishing trips to Canada and at a lake cabin in Arkansas were in fact incurred, and that they satisfied the "ordinary and necessary" requirements for business expenses generally, under I.R.C. § 162. Nevertheless, the Rowells failed to show that their claimed deductions for entertainment expenses met the more restrictive requirements of I.R.C. § 274(a)(1). Under this section, no deduction is allowed for activities "generally considered to constitute entertainment, amusement, or recreation," unless the taxpayer shows that the expense was "directly related to" the active conduct of the taxpayer's trade or business, or, if the expense was incurred directly preceding or following a genuine business discussion, it was "associated with" the trade or business of the taxpayer. *Id.* § 274(a)(1)(A). With regard to expenses for a facility used for business activity, the deduction is limited to the portion of the expense that meets the requirements stated above. *Id.* § 274(a)(1)(B).

As the Tax Court indicated, Rowell failed to show that bona fide business discussions took place either on the trips to Canada or at the lake cabin. Rowell testified he was usually not even present when clients used the cabin; thus the court properly held that the entertainment expenditures were not "directly related to" Rowell's practice. The expectation of future goodwill is insuf-ficient to sustain deductibility for business expenses. *See* 26 C.F.R. § 1.274–(2)(c)(3)(i); *Berkley Mach. Works & Foundry Co. v. Commissioner*, 623 F.2d 898, 903–05 (4th Cir.) (taxpayer's expectation of goodwill or business benefit at some indefinite future time did not meet requirements of section 274), *cert. denied*, 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 147 (1980); *Handelman v. Commissioner*, 509 F.2d 1067, 1074 (2d Cir.1975) (expenses of entertaining customers on sailboat to establish goodwill not directly related to active conduct of business).

■ Rowell, an attorney who assumed responsibility for preparing the tax returns of others, substantially and regularly understated his income over a period of several years. The pattern of disregard for tax law shown in this case is clear and convincing evidence of fraud within the meaning of section 6653.

Accordingly, the judgment of the Tax Court is affirmed.