In re Brian J. CALLERY.

No. 97–48586.

United States Bankruptcy Court, D. Massachusetts.

March 1, 2002.

Richard A. Savrann, Gargill Sassoon & Randolph, Boston, MA, for Brian J. Callery.

Jeffrey S. Ogilvie, Boston, MA, for Massachusetts Dep. of Rev.

Stephen J. Turanchik, Civil Trial Section, Northern Region, U.S. Dep. of Justice, Washington, DC, for Internal Revenue Service.

### FINDINGS OF FACT AND RULINGS OF LAW

JOEL B. ROSENTHAL, Bankruptcy Judge.

Before the Court for determination are Objections to Proofs of Claim filed by Brian J. Callery (the "Debtor") relative to income taxes claimed as owed to the United States Internal Revenue Service ("IRS") and the Massachusetts Department of Revenue ("MDOR").

## I. FINDINGS OF FACT

Between 1994 and 1996, the Debtor was involved in the so-called "diversion" or "gray-market" business whereby he would purchase health and beauty products from producers and manufacturers priced below wholesale value and sell such products to wholesalers and retailers. In order to obtain these discounts, the Debtor would misrepresent himself to the producers and

manufacturers of the products as an agent for institutional purchasers. The Debtor would warehouse such products and then sell them to undisclosed wholesalers and retailers. The Debtor received a 3–10% commission on the sale of the products, depending on the size of the order.

During the course of this business, the Debtor maintained multiple bank accounts under his name solely and under various fictitious business names. The Debtor was the only person with signatory authority to all of these bank accounts, with the exception of a joint account he shared with his wife, Olga Callery. The purpose of maintaining these multiple bank accounts was to hide the identity of his sources and clients, which the Debtor claims was critical to the successful operation of his business because his customers did not want their identities known to the manufacturers. Therefore, the acquisition, warehousing, and distribution of the products were handled utilizing different bank accounts. The Debtor paid the expenses related to the business such as warehousing, rent, and utilities. Dennis J. Sentner, the Debtor's tax accountant and consultant, consulted with the Debtor between 1994 and 1996 as to strategies to employ in maintaining adequate records for tax reporting purposes.

The Debtor filed a petition under Chapter 13 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code"), which was voluntarily converted to a Chapter 11 proceeding. The original bar date for creditors to file proofs of claim was set for June 8, 1998, however, on September 23, 1998, this Court Ordered the bar date to be reset to November 25, 1998 (the "Bar Date").

*The MDOR Claim*

On May 11, 1998, the MDOR timely filed its original proof of claim for pre-petition taxes. On July 30, 1998, the MDOR filed its second proof of claim for pre-petition taxes. On March 26, 1999, the MDOR filed its third, and last, proof of claim for pre-petition taxes. On April 27, 2000, the Debtor filed an Objection to MDOR's last proof of claim.

In the Debtor and the MDOR's Pre–Trial Stipulation (Docket # 114) (the "Stipulation"), the parties agree (1) that MDOR accepts the Debtor's returns for 1991 and 1992 and withdraws those two tax years from its proof of claim; and (2) that the Debtor has not filed Massachusetts income tax returns for 1993 through 1997. Also, the MDOR states in the Stipulation that the MDOR "adopts and incorporates ... the statement of contested facts of the IRS set forth in the Pre–Trial Stipulation between the Debtor and the IRS." [1] Further, the MDOR stated on the hearing date that it will calculate the Debtor's tax liability for tax years 1994 through 1996 utilizing the income as determined by this Court for the IRS claims objections.

*The IRS Claim*

Sometime in 1997, the IRS began examining the Debtor because he failed to file tax returns and provide records the IRS needed to assess his tax liability. [2] The IRS issued a summons relative to the Debtor's records but he failed to comply. On December 29, 1997, a United States Magistrate Judge issued an order directing the Debtor to obey the IRS summons and to appear (with the documents described in the summons) before the IRS. The Debtor failed to obey this order. Sub-

---

**1.** The IRS' Pre–Trial Stipulation reconstructs the Debtor's income for 1994 through 1997.

**2.** The IRS initially began investigating Olga Callery, the Debtor's wife, because of an erroneous 1099 form which showed income to Mrs. Callery of 100 times the actual amount.

sequently, the District Court issued an order·directing the Debtor to show cause why he should not be held in contempt for violating its order. The Debtor failed to appear at the show cause hearing and the Magistrate Judge recommended that the Debtor be found in contempt of court. However, the Debtor was not held in civil contempt. After the contempt hearing, the Debtor and his wife met with the IRS who prepared the Debtor's 1040 U.S. Individual Income Tax Returns ("1040 Form") for 1991, 1992, and 1993 and the Debtor signed such returns. The Debtor was informed at that time that he was free to amend his tax returns if he chose. At the same time, the Debtor and his wife filed joint 1040 Forms for 1994 through 1996. Against the advice of his tax consultant, the Debtor reported zero for income and taxes owing on his 1994 through 1996 tax returns. He and his wife also filed a joint 1040 Form for 1997 in which he claimed a taxable income of $46,029.

On August 18, 1998, the IRS filed a proof of claim for pre-petition taxes claiming taxes owing for 1987, and 1991 through 1997. Because the IRS was in the process of examining the Debtor's tax liabilities in light of his claim of no income, the IRS listed the tax liability as "unassessed liability" for tax years 1991, and 1993 through 1996. On May 8, 2000, the Debtor filed an Objection to the IRS' proof of claim asserting that he filed income tax returns for 1994 through 1997 reporting no taxes due. The Debtor further states that he signed the 1991, 1992, and 1993 income taxes under duress and that his 1987 tax liabilities were paid in full.

On June 2, 2000, the IRS filed an amended proof of claim to reflect the changes resulting from its examination of the Debtor. The amendment significantly increased the Debtor's tax liabilities for 1994 and 1995 and decreased his tax liability for 1996 and 1997. The taxes assessed for 1987, 1991, 1992, and 1993 remained the same except for an increase in the interest owed. Additionally, the IRS estimated claims of $10,000 for 1998 and 1999.

On June 16, 2000, the Debtor filed an Objection to the IRS' amended proof of claim setting forth the same objections as in his objections to the original proof of claim. The Debtor further argues that the amended proof should not be allowed because it was untimely and constitutes a new claim.

## II. PROCEDURAL BACKGROUND

On December 14, 2000, this Court held a hearing on the Debtor's Objections to the MDOR's and IRS' proofs of claim and ordered the "Debtor to provide any and all additional documentation regarding his tax liability to the IRS and MDOR by March 30, 2001. The IRS and MDOR shall review said documents promptly and confer with Debtor." On November 28, 2001, this Court held an evidentiary hearing relative to the Debtor's tax liabilities. The Debtor, the IRS, and the MDOR filed Proposed Findings of Fact and Rulings of Law with this Court.

## III. RULINGS OF LAW

### A. Timeliness of the IRS' Amended Proof of Claim

The Debtor argues that the IRS' amended proof of claim is a new claim, not simply an amendment to its timely filed claim, because the amended proof of claim alleges significantly increased tax obligations.[3]

---

3. In its original proof of claim, the IRS filed a claim for 1994 of $37,649, plus interest of $8,517.95, and in the amended proof of claim

the IRS asserts a claim of $251,328, plus interest of $84,615.24 for that year. In its original proof of claim, the IRS filed a claim

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure address amendments to proofs of claim. *Clamp–All Corp. v. Foresta (In re Clamp–All Corp.)*, 235 B.R. 137, 140 (1st Cir. BAP 1999), citing 9 Lawrence P. King, et al., Collier on Bankruptcy ¶ 3001.01[1] (15th ed. rev.1999). Prior to the bar date, amendments to filed proofs of claim are permissible. *Id.* Amendments to timely filed defective proofs of claim may be made after the bar date has expired. *Hutchinson v. Otis, Wilcox & Co.*, 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179 (1903); *In re Stylerite, Inc.*, 120 F.Supp. 485 (D.N.H. 1954). However, post-bar date amendments should not be allowed if it is in actuality a new claim against the estate. *In re Clamp–All Corp.*, 235 B.R. at 140, citing *In re Int'l Horizons*, 751 F.2d 1213, 1216 (11th Cir.1985).

Since the IRS' original proof of claim was timely filed, this Court needs to determine if its amendment was a new claim. The "nexus" test is utilized in determining if an amended proof of claim is a new claim. *Id.* That test requires amendments to be freely allowed as long as the purpose of the amendment is to cure a defect in the claim, to describe the claim with greater particularity, or to plead a new theory of recovery. *Id.* (citations omitted).

The equitable determination in allowing an amendment to proofs of claim timely filed is left to the sound discretion of the bankruptcy court. *Woburn Associates v. Kahn*, 954 F.2d 1, 10 (1st Cir.1992),

cert. denied, 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993) (citation omitted). "The Court must scrutinize both the substance of the proposed amendment and the original proof of claim to ensure that the amendment meets three criteria." *Id.* First, it cannot assert a new right to payment to which the Debtor was not fairly alerted to by the original proof of claim. *Id.* (citations omitted). Second, the amendment cannot result in unfair prejudice to other holders of unsecured claims against the estate. Lastly, the need to amend must not be the product of bad faith on the claimant's part. *Id.; Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir.1997). The IRS' amended proof of claim meets all three criteria.

This Court finds that the IRS' amended proof of claim does not constitute a new claim; both the original and amended proof of claim assert income tax obligations. The increased amount of the tax obligation reflects the results of the IRS' investigation of the Debtor. The fact that the Debtor's tax liability for two years significantly increased does not render the amendment a new claim because all of the asserted taxes derive from the same right to payment. "[A]s a general rule, amendments intended merely to increase the amount of a claim grounded in the same *right to payment* are not considered 'new' claims under the Code." *Woburn Associates v. Kahn*, 954 F.2d at 10, citing *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr.E.D.Pa.1988). In *In re Tanaka Bros. Farms, Inc.*, 36 F.3d 996 (10th Cir. 1994), the court allowed an amendment to

for 1995 of $37,401, plus interest of $5,317.17, and in its amended proof of claim the IRS asserts a claim for $486,320, plus interest of $96,025.42 for that year. In its original proof of claim the IRS filed a claim for 1996 of $36,452, plus interest of $2,123.95, and in its amended proof of claim the IRS asserts a claim of $934, plus interest

of $70.87 for that year. In its original proof of claim, the IRS filed a claim for 1997 of $36,452.00, and in its amended proof of claim the IRS asserts a claim of $8,018, plus interest of $1,617.93 for that year. Thus, the amendments for 1994 and 1995 were significantly higher.

a timely filed proof of claim even where the end result was a tax liability of four times the amount shown on the original proof of claim.

In the instant case, the Debtor was placed on notice that his tax liability was subject to change; the original proof of claim notes that the Debtor's 1991 and 1993 through 1996 tax liabilities were "unassessed" potential liabilities. The tax liabilities for 1987 and 1990 through 1993 remained the same and the tax liability for 1996 decreased. The degree to which the tax liability changed depended on the type of information the IRS gathered as a result of its investigation. In fact, since the Debtor was still being examined by the IRS when the amended proof of claim was filed, the tax liability for tax years 1994 through 1996 is still listed as "unassessed liability" on the IRS' proof of claim. The Debtor is not prejudiced because the amended proof of claim reflects no new type of tax, no new tax periods, with the exception of post-petition tax payments for 1998 and 1999,[4] and the Debtor was placed on notice that his tax liability for the aforementioned years was subject to change.

Accordingly, this Court will allow the IRS' amended proof of claim as a timely amendment to its original proof of claim.

## B. Method for Calculating the Debtor's Income for 1994 through 1997

The IRS reconstructed the Debtor's income for 1994 through 1997 by utilizing the bank deposit method and prepared projected tax liabilities based on the results. The Debtor claims that the method used was unfair because it did not clearly reflect his income and the IRS neglected to make certain deductions to his income. The Debtor asserts that there are a series of checks that are legitimate business expenses for which the IRS failed to make deductions. The Debtor also claims that there were various inter-account transfers which the IRS improperly documented as income.

■■■■ All taxpayers have a duty to maintain sufficient accounting records for tax reporting purposes. *United States v. Morse*, 491 F.2d 149, 151 (1st Cir.1974) (citation omitted). Where a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable income by any method that clearly reflects income. 26 U.S.C. § 446(b); *Holland v. United States*, 348 U.S. 121, 130–132, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The taxpayer bears the burden of proving that the assessment is arbitrary or erroneous. *Day v. Commissioner*, 975 F.2d 534, 537 (8th Cir. 1992). A court must accept the Commissioner's method of reconstructing income "so long as it is rationally based." *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Bernuth v. Commissioner*, 470 F.2d 710, 714 (2nd Cir.1972); *Rowell v. Commissioner*, 884 F.2d 1085, 1087 (8th Cir.1989) (citation omitted). When taxpayers fail to file returns or file returns substantially understating their income, and cannot produce records which provide the "[a]rithmetic precision . . . originally and exclusively in [their] hands," an assessment is necessarily an estimate. *Rowell*, 884 F.2d at 1088. "As long as the method for assessment is reasonable and logical, defaulting taxpayers may not complain of the inevitable inaccuracies in assessment their default occasions." *Id.* at 1087–88.

---

**4.** Tax years 1998 and 1999 are not at issue in this case since they are post-petition administrative expenses.

■ The bank deposit method may be used in reconstructing a taxpayer's income and has in fact received consistent judicial approval. See *United States v. Morse*, 491 F.2d 149 (1st Cir.1974); *Bevan v. Commissioner*, 472 F.2d 1381 (6th Cir.1973); *United States v. Lacob*, 416 F.2d 756 (7th Cir. 1969), cert. denied, 396 U.S. 1059, 90 S.Ct. 755 (1970); *Morrison v. United States*, 270 F.2d 1 (4th Cir.1959); *Page v. Commissioner*, 58 F.3d 1342 (8th Cir.1995). "Faced with nearly $700,000 deposited over a four-year period of time; no financial records; evidence pointing to an insurance speculation scheme; and no returns or returns reporting minimal income for the relevant period; the Commissioner had little choice but to use the indirect bank deposits method to reconstruct [the taxpayer's] income." *Dodge v. Commissioner*, 981 F.2d 350, 353 (8th Cir.1992). Likewise, the bank deposit method is reasonable and rationally based in the instant case as the Debtor failed to maintain adequate accounting records. The Debtor did not maintain sufficient invoices, canceled checks, ledgers, and deposit slips. The Debtor claims that because of the importance of hiding the identity of his customers he was unable to maintain records of his transactions.[5] This is not a sufficient reason for failing to maintain adequate records.

■ "In order to legitimately avail itself of [the bank deposit method] the government must initially introduce evidence to show (1) that, during the tax years in question, the taxpayer was engaged in an income producing business ... (2) that he made regular deposits of funds into bank accounts; and (3) that an adequate and full investigation of those accounts was conducted in order to distinguish between income and non-income deposits." *United*

States v. Morse*, 491 F.2d at 152. The IRS has demonstrated in the case at bar that the Debtor was involved in an income producing business, that he made regular deposits into bank accounts, and that it conducted an adequate and full investigation of the accounts in order to distinguish between income and non-income deposits. Therefore, the IRS may avail itself of the bank deposit method.

■ Once the deposits are shown to be income, it becomes the "taxpayers' responsibility to persuade the trier of fact that the deposits were nontaxable." *Dodge v. Commissioner*, 981 F.2d at 354; *Calhoun v. United States*, 591 F.2d 1243, 1245 (9th Cir.1978), cert. denied, 439 U.S. 1118, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979); *Ruark v. Commissioner*, 449 F.2d 311, 312 (9th Cir.1971). Deductions are a matter of legislative graces, and a taxpayer has the burden of establishing that he is entitled to any deduction claimed on the return. *Deputy v. du Pont*, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416 (1940). If a taxpayer's records are inadequate or there are no records, a court may still allow a deduction on a reasonable estimate provided the taxpayer establishes he is entitled to some deductions. See *Norgaard v. Commissioner*, 939 F.2d 874, 879 (9th Cir. 1991).

Accordingly, the Debtor bears the burden of coming forward with reliable evidence regarding proper deductions. The Debtor complains that it is impossible to produce documentary evidence of each deposit and withdrawal because of the nature of his business. However, this is a risk and a burden a taxpayer takes when he chooses to be involved in the "diversion" business and does not maintain a sufficient transaction trail.

---

5. The Debtor testified that he feared if anyone obtained access to his accounting books, the identity of his customers would be revealed and he would lose business.

The IRS determined that the Debtor deposited or transferred money into his various bank accounts for the pertinent years as follows:

| Year | 1994 [6] | 1995 [7] | 1996 [8] | 1997 [9] |
|---|---|---|---|---|
| Bank Deposits | $1,470,020 | $2,852,942 | $404,789 | $82,685 |

Additionally, the IRS and the Debtor have agreed on the following deductions:

| Year | 1994 | 1995 [10] | 1996 | 1997 |
|---|---|---|---|---|
| Agreed to Deductions | $546,826 | $959,898 | $131,787 | $35,430 |

Thus, the IRS has determined the Debtor's taxable income as follows:

| Year | 1994 | 1995 | 1996 | 1997 |
|---|---|---|---|---|
| Taxable Income [11] | $923,194 | $1,893,044 | $273,002 | $47,255 |

Based on the evidence at trial, this Court finds that there are further deductions to which the Debtor is entitled. Additional deductions of $127,389, which represents two inter-account transfers,[12] and $86,194, which represents a seizure from the Debtor's account,[13] should be made to the Debtor's 1995 taxable income. Although the Debtor claims that he is entitled to further deductions, he provided this Court with no evidence of these additional deductions. Therefore, the Debtor's taxable income for the years in question is as follows:

| Year | 1994 | 1995 | 1996 | 1997 |
|---|---|---|---|---|
| Bank Deposits | $1,470,020 | $2,852,942 | $404,789 | $82,685 |
| Agreed to Deductions | $ 546,826 | $ 959,898 | $131,787 | $35,430 |
| Additional Deductions | 0 | $ 213,583 | 0 | 0 |
| Taxable Income | $ 923,194 | $1,651,659 | $273,002 | $47,255 |

The IRS and the MDOR [14] are to calculate the Debtor's tax liability for the aforementioned years based on these figures.

6. In 1994 the Debtor had three accounts with Bank of Boston: one under his name, one under his and his wife's name, and one under the name of Medserv/Managed Care.

7. In 1995 the Debtor had four accounts under his name: two under his and his wife's name, one under Medserv Managed Care, one under Intersource Microsystems, one under Healthcare Services, one under Calcar Medical, and two under Medserve/Managed Care. These accounts were from Bank of Boston and Ipswich Bank.

8. In 1996 the Debtor had one account under his and his wife's name, two under Calcar Medical, one under Intersource Microsystems, one under Ekos, and one under Healthcare Services.

9. In 1997 the Debtor had the following accounts: Calcar Medical, Intersource Microsystems, Ekos, Healthcare Services, and one under his and his wife's name.

10. The joint stipulation stated that the Debtor had proper deductions of $878,898. At the hearing the Debtor produced a receipt for $70,000 that the IRS agreed constituted an additional deduction since it accounted for an inter-account transfer.

11. This figure represents the taxable income agreed to between the Debtor and the IRS. However, the Debtor argues that since there are further deductions that should be made, his taxable income is actually lower than this figure.

12. On January 31, 1995, $100,389 was transferred from account number 511–23338 to account number 531–43501. On March 31, 1995, $27,000 was transferred from account number 531–43491 to account number 531–43501...

13. This amount represents a seizure from Debtor's bank account number 531–43488 by one of his vendors for product non-payment.

14. The MDOR may only calculate the Debtor's tax liability for 1994 through 1996 because the parties have already stipulated to the Debtor's tax liability for 1997.

### C. IRS Tax Years 1991, 1992, and 1993

The Debtor challenges the IRS tax assessment for tax years 1991, 1992, and 1993 claiming that he signed the tax returns under duress. In order to establish duress as a defense in bankruptcy, the Debtor must establish duress as defined by state law. *In Re Carter*, 177 B.R. 951 (Bankr.N.D.Okla.), *aff'd* 45 F.3d 439 (10th Cir.1994). The Supreme Judicial Court has stated that "[t]o avoid a contract on the basis of duress, a party must show that conduct by the other party caused him to enter into the contract under the influence of such fear as precludes him from exercising free will and judgment." *Coveney v. President & Trustees of College of Holy Cross*, 388 Mass. 16, 445 N.E.2d 136 (1983) (citations omitted). The Debtor has failed to provide this Court with any evidence indicating that he signed the tax returns under duress. The Debtor did not object to signing the tax returns. The Debtor did not file an amended tax return as he was informed he was entitled to do.

Accordingly, this Court finds no duress and that the taxes owed to the IRS for 1991 through 1993 are as set forth in the IRS' amended proof of claim.

### D. Balance of Tax Years

A proof of claim filed in accordance with the Bankruptcy Rules is prima facie evidence of the validity and amount of the claim. Fed. R. Bank. P. 3001(f); *In re Hemingway Transport, Inc.*, 993 F.2d 915, 925 (1st Cir.1993), *cert. denied*, 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993); *United States v. Braunstein*, 209 B.R. 152, 155, 157 (Bankr.D.Mass.1997). In order to rebut the presumption that attaches to a proof of claim, the party objecting must come forward with "substantial evidence." *Hemingway Trans-*

*port*, 993 F.2d at 925; i.e. also *In re Beverages Int'l, Ltd.*, 50 B.R. 273, 276 (Bankr. D.Mass.1985).

Relative to the MDOR's proof of claim, the Debtor does not object to the assessment by the MDOR of $1,025 for 1997 and the MDOR withdrew its proof of claim for tax years 1991 and 1992. As mentioned above, the MDOR may calculate the Debtor's tax liability for 1994 through 1996 using the taxable income as calculated by this Court. Therefore, the only tax year left to discuss relative to the MDOR is 1993. Here, the Debtor has presented no evidence to support his objections relative to the 1993 MDOR tax claim. Merely filing an objection to a proof of claim with nothing more is "insufficient to overcome the rebutable presumption." *In re White*, 168 B.R. 825 (Bankr. D.Conn.1994). Accordingly, this Court finds that the Debtor's tax liability for 1993 is as set forth in the MDOR's proof of claim.

The only tax year for which federal taxes remain unresolved is 1987. The Debtor claims that he paid his 1987 tax liabilities in full. However, the IRS claims that the Debtor has made payments of only $422.77 and claims that a balance of $9,822.91 is owed as reflected in its proof of claim. Since the Debtor proffered no evidence of payments of his 1987 federal tax obligations, this Court finds that the IRS' tax claim for 1987 on its proof of claim is valid.

### E. Penalties

The Internal Revenue Code Section 6651(a) imposes a penalty of up to 25% of the taxpayer's unpaid tax. The taxpayer may avoid such a penalty for reasonable cause if he can show that he exercised ordinary business care and prudence in providing for the payment of his liability but either was unable to pay or would have suffered "undue hardship" if

he paid on the due date. *Norton v. United States,* 213 Ct.Cl. 215, 551 F.2d 821, 827 (1977). The taxpayer has the burden of proving that failure to pay was due to reasonable cause and not to willful neglect. *Id.* Since the Debtor has offered no evidence or excuse for not paying his taxes, a 5% penalty may be assessed on the years for which he neglected to pay his federal income taxes.

■ The Internal Revenue Code Section 6662 imposes an accuracy-related penalty of 20% of the portion of the underpayment of tax attributable to any substantial understatement of income tax. An understatement is substantial if it exceeds the greatest of (1) 10% of the tax required to be shown on the return for a taxable year; or (2) $5,000. Since the Debtor reported "0" on his returns for 1994 through 1996 and the tax due on each of the returns exceeded $5,000, the Debtor is liable for the substantial underpayments of tax penalty.

The accuracy-related penalty will not be imposed with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. See 26 U.S.C. § 6664(c). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the factual circumstances. Since the Debtor has not offered any evidence indicating that there was reasonable cause for understating the amount of taxes he owed for 1994 through 1996, this accuracy-related tax is applicable.

## IV. CONCLUSION

Accordingly, after carefully reviewing the parties' joint stipulations, memoranda of law, proposed findings of facts and rulings of law, and having listened to the testimony of two witnesses, this Court finds that the Debtor's tax liability to the IRS for 1987, 1991, 1992, and 1993 are as set forth in its proof of claim; the Debtor's tax liability for 1994 through 1997 may be calculated using the taxable income as calculated by this Court. Additionally, this Court finds that the Debtor's tax liability to the MDOR for 1993 and 1997 are as set forth in its proof of claim and the Debtor's tax liability for 1994 through 1996 may be calculated using the Debtor's taxable income as calculated by this Court.