**TOWNSEND INDUSTRIES, INC. Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CIV.4–01–CV–10176.**

United States District Court,
S.D. Iowa,
Central Division.

May 31, 2002.

Bruce B Graves, William E Hanigan, Brown Winick Graves Gross Baskerville & Schoenebaum PLC, Des Moines, IA, for plaintiff.

Joan Stentiford Ulmer, U.S. Dept. of Justice, Tax Division, Washington, DC, for defendant.

## ORDER

LONGSTAFF, Chief Judge.

This case involves the taxable nature of annual fishing trips provided by plaintiff to its employees and sales personnel. The Internal Revenue Service ("IRS") examined plaintiff's corporate tax returns, and assessed employment taxes totaling $24,591.91 for 1996, and $33,906.55 for 1997, because plaintiff had not treated the expenses it incurred with its annual fishing trips as wages to its employees in those years.[1] Plaintiff sought administrative review of these assessments with the IRS Appeals Office in Des Moines, Iowa. This resulted in an agreement regarding the amounts of the proposed employment tax deficiencies for the relevant periods, and assumed for purposes of the agreement that such deficiencies were properly assessed. *See* Complaint, Exhibit A (Form 2504).

On June 16, 2000 plaintiff paid $100.00 of the assessed employment tax deficiency for the 1996 fishing trip. The Internal Revenue Service has not sought collection of the remaining portions of the tax deficiencies. Plaintiff then filed a claim for a refund of its $100 payment with the IRS on June 27, 2000. *Id.*, Exhibit B (Form 843). Plaintiff filed its complaint against the government in this Court on March 21, 2001. Plaintiff argues such employment tax deficiencies were improperly assessed,

---

1. These employment tax amounts represent social security and medicare withholdings, income tax withholdings, and interest.

that the amounts it paid for the fishing trips were not wages, and that it is owed a refund of the $100 it paid in employment taxes. The government has since filed a counterclaim asserting a claim for the remaining tax deficiencies.

Before the Court is the government's March 15, 2002 motion for summary judgment. Plaintiff filed a resistance to the motion on April 8, 2002. Defendant then filed a reply on April 22, 2002. Oral argument has been requested, but as the matter was well briefed by both sides, a hearing is unnecessary and the matter is fully submitted.

## I. BACKGROUND

The following facts are either undisputed or viewed in a light most favorable to plaintiff as the non-moving party. Plaintiff, Townsend Industries, Inc. ("Townsend"), was founded by Robert Townsend in 1957. Mr. Townsend is still the president and sole shareholder of the Iowa corporation that is located in Altoona, Iowa. The company manufactures T–51 printing press attachments. Small print shops that operate printing presses use these attachments. The attachments give users the ability to print multiple color documents giving the shops a greater graphic arts capacity. The attachments contain approximately 800 different parts, and are assembled at the company's plant in Altoona.

Townsend distributes its own products, employing three in-house sales personnel. The in-house sales personnel are responsible for selling the attachments in regions across the country. Townsend also uses two independent corporations, T–51 Western, Inc. and T–51 Southern, Inc., and their sales personnel to distribute the attachments to other parts of the United States. Additionally, Townsend has inter-national distributors in Great Britain and Australia who use their own sales personnel to distribute Townsend attachments. The in-house sales personnel, along with those from the T–51 companies and the international distributors, sell the attachments to dealers. These dealers then sell the attachments to the shops that use the product.

Ever since the company was founded in 1957, Townsend has arranged and paid for a fishing trip. The trip annually takes place in June. The in-house sales personnel, and at least some of the other salespeople, come to Altoona for the annual sales meeting at the company offices on a Monday and a Tuesday. At least parts of the sales meetings are generally attended by other company employees, including engineers and factory workers. Buses then leave on Wednesday to go on the fishing trip. Townsend employees, the sales personnel, and company executives are invited. Individuals employed in Townsend's plastics division are not invited. Additionally, spouses and children of employees and salespeople are not invited.

Following a long drive, the buses arrive at a fishing lodge on a Wednesday evening. Those attending stay in cabins at the lodge. The cabin assignments are made by Robert Townsend and John Jorgensen, chief executive officer of the company, in an attempt to promote discussions about Townsend's business. The guests then fish during the day on Thursday and Friday. Again, Robert Townsend and John Jorgensen try to strategically arrange fishing assignments to promote helpful work conversations by placing individuals together in boats.[2] Breakfast is provided at the lodge, a shore lunch is provided in the middle of each day, and dinner at night. On Friday night, both Robert Townsend

---

**2.** The record indicates that participants were expected to accept their cabin and boat as-signments, but could request a change. It appears such changes were routinely allowed.

and John Jorgensen speak to the group after dinner. They address the current and future state of the company. Then, the buses leave on Saturday and return to Altoona.

Townsend employees receive their regular compensation while on the trip, and are not charged vacation time. Employees are strongly encouraged to attend the trip, although it is not labeled as mandatory. Those employees who do not attend either have to stay in Altoona and work, or take vacation time.

The time-frame relevant to this action is 1996 and 1997. During both years, Townsend held its sales meeting on a Monday and Tuesday in June at the company's offices in Altoona, and then on Wednesday loaded up two buses to go to Totem Lodge, a five-star fishing resort located on Lake of the Woods in Sioux Narrows, Ontario. In 1996, seventy-eight people went on the trip. Sixty-five of those attending were employees of Townsend and at least four were distributors or other sales personnel. Additionally, a physician, accountant, two suppliers, a former employee, and Mr. Townsend's wife attended the trip. In 1997, sixty-eight people attended: fifty-six Townsend employees, six sales personnel, an accountant, a physician, two suppliers, Mr. Townsend's wife, and a friend of Mr. Townsend. The trip cost the company $875.03 per person in 1996, and $844.15 per person in 1997.

Two buses left at 7:00 a.m. both years, and arrived at Totem Lodge at approximately 7:00 p.m. on a Wednesday. The record shows that business discussions occurred on the bus between a variety of Townsend employees and the salespeople. Robert Townsend reports spending a lot of time on the bus visiting with factory employees and sales personnel. After arriving at Totem Lodge on Wednesday evening, dinner was provided. The record also shows that business discussions occurred in the cabins, and were encouraged. Of course, normal social conversation was also on-going.

During the day on Thursday and Friday of the 1996 and 1997 trips, most people went fishing in a boat with three other people and a guide from the Lodge. Again, Townsend and Jorgensen arranged the boat assignments, and these assignments were posted on a chalk board. Other people had the option of playing golf, or people could stay at the lodge itself.[3] The record reflects that business discussions relating to the company, its products, service, problems and solutions occurred while fishing or golfing, along with discussions on non-business topics. On the Friday night of the trips in 1996 and 1997, as in other years, Robert Townsend and John Jorgensen gave speeches after dinner that addressed the current and future state of the company. On Saturday, the buses left at 8:00 a.m. and arrived in Altoona at approximately 8:00 p.m. Predictably, there were fewer business discussions, and other discussions, on the bus rides home.

The record reflects that employees generally spent from one hour to three hours per day discussing Townsend related business on each of the four days of the annual trip. Discussions occurring at the Monday and Tuesday sales meetings, continuing on the fishing trip the remainder of the weeks, led to several changes in the way Townsend carried out its business. In 1996, an idea for a new model of the T-51 attachment the company manufactures was discussed amongst engineers and others at the sales meeting and on the fishing trip. This change became a new model of the attachment, the anniversary edition,

---

**3.** The record reflects that hiking, jet skiing, and a few other activities were available, but the majority fished and a few golfed. No more than eight golfed on any day of the trip, and few if any engaged in any of the other activities.

which was released to the market in late 1997. The fishing trip also afforded the opportunity for sales personnel to discuss problems that customers were having with the company's products with people who could resolve those problems. One salesperson and some factory employees discussed a "burr" on an attachment part and discussed ways to resolve it. This part was later corrected. Another salesperson talked about a problem customers were having with a water fountain roller on the Townsend attachments, and the factory employee and the salesperson concluded the problem was the cleaning solvent that was used on the roller in the manufacturing process. This problem was corrected. Other sales personnel requested special items be added to the attachments, and in some instances, the engineers and factory employees were able to accommodate the sales personnel. Additionally, general business discussions on the fishing trip resulted in other changes at Townsend, such as the way in which parts were pulled in the factory and how parts were double-checked during the manufacturing process.

## II. APPLICABLE LAW & DISCUSSION

Underlying this case is the following apt commentary:

> The deductibility of entertainment expenses [by both employers and employees, and, relatedly, determining whether such expenses when paid by an employer should constitute wages to employees,] has long been a disaster area, producing results that do not satisfy taxpayers, practitioners, the IRS, Congress, or the general public. The

> roots of the problem are that a bright line cannot be drawn between business and pleasure, that administrators and judges are fallible human beings, and that any mechanical rule is bound to put numerous items on the wrong side of the line.

Boris I. Bittker and Lawrence Lokken, FEDERAL TAXATION OF INCOME, ¶ 21.2.1 ("Entertainment, Amusement, and Recreation"), at 1997 WL 439577.

### A. Standard of Review

██ Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*[4]

---

**4.** In its brief, the government asserts that it is plaintiff's burden to establish that it is entitled to a refund and that plaintiff must show that the government has money which belongs to it. *See Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932). The Court agrees that this is a burden a plaintiff must

carry at trial in a tax refund case. However, the government appears to assert that this burden somehow applies for purposes of this summary judgment motion. It does not directly apply at this stage of the case, as the government as the moving party has the burden of establishing the absence of a genuine

### B. Relevant Tax Code Provisions and Regulations

Several provisions of the tax code are relevant to analyze whether the employee tax assessments were proper or if a material issue of fact remains concerning the validity of these assessments. At the heart of the matter is the tax code's definition of the term "wages," and whether the cost of the fishing trips should constitute wages to the employees, and therefore amounts that the government can assess for purposes of calculating employment taxes. "[T]he term wages means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash...." 26 U.S.C. § 3121(a). Excepted from the definition of wages is "any benefit provided to or on behalf of an employee if at the time such benefit is provided it is reasonable to believe that the employee will be able to exclude such benefit from income under *section ... 132*." 26 U.S.C. § 3121(a)(20) (emphasis added). This reference to 26 U.S.C. section 132 moves the focus from what is primarily an employer's concern—what constitutes wages to be paid—to what is primarily an employee's concern—what constitutes gross income. For the remainder of the analysis, it is important to note that if something would be excludable or deductible from an employee's gross income, then it would not constitute wages for purposes of calculating employment taxes.

Section 132 lists matters excludable from an employee's gross income, and includes any "working condition fringe," 26 U.S.C. § 132(a)(3), which is defined as "any property or services provided to an employee of the employer to the extent that, if the employee paid for such property or services, such payment would be allowable as a deduction under section 162 ...." 26 U.S.C. § 132(d). An allowable deduction under section 162 is for "all the ordinary and necessary expenses paid or incurred ... in carrying on any trade or business, including ... traveling expenses (including amount expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business." 26 U.S.C. § 162(a)(2). Additionally, when expenses are asserted to be "ordinary and necessary" business expenses under section 162, heightened requirements stated in 26 U.S.C. section 274 must be met.

Section 274 disallows some deductions from gross income—and hence, causes certain items to be included as wages or gross income. It requires substantiation for otherwise allowable deductions for activities that are "generally considered to constitute entertainment, amusement or recreation." 26 U.S.C. § 274(a)(1)(A). The deduction for such expenses will not be allowed "unless the taxpayer establishes that the item was directly related to, or, *in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business ....*" *Id.* (emphasis added). The taxpayer establishes such expenses for the purpose of receiving a deduction by providing:

adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the

issue of material fact for trial; or in other words, the government must show that there is no set of reasonable facts that would allow a factfinder to determine that plaintiff has shown the government has money which belongs to it.

facility . . . ., (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained . . . .

26 U.S.C. § 274(d)(4). However, this substantiation rule does not apply if the "[e]xpenses for recreational, social, or similar activities (including facilities therefor) [are] primarily for the benefit of employees." 26 U.S.C. § 274(e)(4).

Some treasury regulations which address the relevant tax code sections are also helpful in the analysis of whether the fishing trip expenditures should constitute wages. Facilities or privileges offered by an employer to employees generally are not wages "if such facilities or privileges are of relatively small value and are offered or furnished by the employer merely as a means of promoting the health, good will, contentment, or efficiency of his employees." 26 C.F.R. § 3121(a)–1. Additionally excluded from wages are expenses paid by an employer "for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer." 26 C.F.R. § 31.3401(a)–1. Per diem, mileage allowances, meal expenses, traveling expenses "incurred in the business of the employer" are not wages to employees. 26 C.F.R. §§ 3121(a)–1(b)(2), 31.3121(a)–1(h), 31.401(a)–1(b)(9).[5]

C. Townsend's 1996 and 1997 Fishing Trips as "Ordinary and Necessary" Business Travel Expenses

▮ Whether the cost of Townsend's fishing trips is a working condition fringe under section 132 and excludable from an employee's gross income, and thereby excludable from the employer's calculation of employee's wages, hinges on whether the expense is "ordinary and necessary . . . in carrying on any trade or business, including traveling expenses (including amount expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business." 26 U.S.C. § 162(a)(2). Expenses are ordinary and necessary if "incurred or reasonably expected to be incurred in the business of the employer." 26 C.F.R. § 31.3401(a)–1. Ordinary means " 'normal, usual, or customary' practice for the type of business involved." *Danville Plywood Corp. v. United States*, 899 F.2d 3, 6 (Fed. Cir.1990) (quoting *Deputy v. du Pont*, 308 U.S. 488, 495, 60 S.Ct. 363, 84 L.Ed. 416 (1940)). Necessary means the "expenditure must only be 'appropriate and helpful' to the development of the taxpayer's business." *Id.* (quoting *Comm'r v. Tellier*, 383 U.S. 687, 689, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966)).

▮ In this case, Townsend held an annual sales meeting on Monday and Tuesday, and it held an annual fishing trip Wednesday through Saturday of that same week. The company has done this for more than forty years, and it appears this practice has helped it prosper. Townsend did not have planned meetings throughout the days of the fishing trip, but it asserts that the fishing trip continued much of the dialogue begun on Monday and Tuesday of

---

**5.** Townsend cites 26 C.F.R. section 1.274–2(e)(2)(i), as read with regulations 31.3121(a)–1(f), 31.3401(a)–1(b)(2), and 31.3401(a)–1(b)(10), for the proposition that the fishing trips represent privileges that are to be excluded from a wage calculation as they were held at an excludable facility. Townsend asserts this set of regulations, in particular 1.274–2(e)(2)(i), clearly indicates that section 274 should not apply in this case. This body of regulations, however, when read together, addresses the deductibility of the fishing trips to Townsend. It does not address whether employment taxes should be assessed and whether such expenses constitute wages, and thus 26 C.F.R. section 1.274–2(e)(2)(i) is not applicable in this case.

that week. The record reveals that cabin and boat arrangements were strategically made by the company's president and CEO to promote business conversations, in a relaxed and enjoyable environment, that would not otherwise occur in the course of the employees' and sales personnels' work functions. A typical example of such conversations would occur amongst sales personnel and factory workers and engineers regarding the manufacture or design of a part on the company's printer attachments. The record does provide evidence, mostly testimonial from the depositions of those employees and sales personnel who attended the fishing trips, that positive business results directly stemmed from the fishing trip. Additionally, Townsend employees were paid their normal wages for the Wednesday, Thursday and Friday of the fishing trips. If employees did not attend, they had to work or take vacation time. Spouses and families of the employees and salespeople did not attend.[6]

■ Expenses incurred to purely promote "good will" do not qualify as "ordi-

nary and necessary" under section 162. The Court finds that Townsend's trips went beyond trying to promote good will with its employees, as it sought out and intended to reap business benefits from the trip. A key to whether Townsend can show the expenses were ordinary and necessary is how closely aligned the fishing trip was to the annual sales meeting. Another important issue is whether the trip really was a mandatory duty of Townsend employees or if it could be skipped without consequence. Based on the record before it, the Court cannot conclude that the fishing trip was completely disjointed and separate from the annual sales meeting, nor can the Court find this was a pleasure trip.[7] The issue of whether the section 162 standard can be met remains for trial.

### D. Section 274

■ The government asserts that even if Townsend could show the fishing trips were ordinary and necessary business travel expenses, it cannot meet the heightened requirements of 26 U.S.C. section 274. It alleges section 274 does apply in

6. As previously indicated, Robert Townsend's wife attended, and in 1997, one of his friends and a former employee attended. The Court believes that this matter is not at issue, and that it is not expected to separate out those who were employees and those who were not, as it appears the parties have agreed as to what the exact tax assessment will be if Townsend is found liable for it.

7. The Court finds case law cited by the government in support of its argument that the cost of the fishing trips was not an "ordinary and necessary" business expense to Townsend distinguishable from the case at hand. Many of the cases cited by the government involve the entertainment of customers by the company at issue, and while the cases do address whether certain expenses are ordinary and necessary, this is not a customer-entertainment case. Here, the central question is whether the costs of a fishing trip to employees should be counted as wages to those employees. *Danville Plywood Corp. v. United*

*States,* 16 Cl.Ct. 584 (Cl.Ct.1989), *affd.* 899 F.2d 3 (Fed.Cir.1990), involved a situation where a company paid for six of its employees, fifty-eight of its customers, and numerous spouses and family members to attend the Super Bowl in 1980 and 1981. Business meetings were not held, before or after the trip, and business discussions occurred purely informally. *Berkley Machine Works & Foundry Co. v. Comm'r,* 623 F.2d 898 (4th Cir.1980) involved a company that was attempting to deduct business entertainment expenses for the costs it incurred in maintaining a hunting and fishing lodge. This lodge was used by the company's customers and their employees on numerous weekends, and often the only representatives of Berkley Machine Works were the company's president who lived nearby and the salesperson responsible for that customer's account. The Fourth Circuit Court of Appeals determined that such costs were not deductible to the company, pursuant to the heightened requirements of section 274.

this case as Townsend cannot show that the fishing trip falls into the category of "recreational expenses for employees" contemplated by section 274(e).

Section 274(e) provides for exceptions from this statute's heightened requirements. Specifically, subsection 274(e)(4) states that "[e]xpenses for recreational, social, or similar activities (including facilities therefor) primarily for the benefit of employees (other than employees who are highly compensated employees within the meaning of section 414(q))" are not subject to the heightened requirements. This subsection does not exempt Townsend from the application of section 274. As this Court finds that there is a material issue of fact whether the cost of the fishing trips was a ordinary and necessary business travel expense pursuant to section 162, then subsection 274(e)(4) cannot exempt Townsend from section 274's heightened requirements because, under the code, the trip cannot be both primarily a business travel expense and an expense "primarily for the benefit of employees." If it was not a business expense under section 162, then the issue of whether section 274's heightened requirements applies will be a moot question that will not be reached in the analysis of these claims. Thus, subsection 274(e)(4) does not exempt Townsend from the general application of the heightened requirements of section 274.

Townsend argues the heightened requirements stated in section 274, including the document substantiation requirements listed there, are not applicable to the analysis for other reasons. It first asserts that under section 274, the government has to label the purpose of the fishing trips as either entertainment or recreation, and the government cannot assert that the trips were designed for both of these purposes and not business. In its brief, the government has asserted that the trips' purposes were both entertainment and recreation.

Second, Townsend argues that the requirements of section 274 do not apply to traveling expenses, but only to entertainment activities and facilities, and that a significant percentage of the cost of the fishing trips was travel-related. Third, it asserts that section 274 would only apply if plaintiff were seeking to deduct its expenses for the trip, which is not the case at hand. And finally, Townsend argues that if this section of the tax code does apply, it can meet the substantiation requirements of section 274(d).

This Court finds Townsend's first three arguments invalid, and hence section 274 and its requirements do appear relevant to the matter at hand. First, the Court finds little significance in the government's assertions that the purpose of the fishing trips was both entertainment and recreation. The government went to great lengths in its brief to emphasize the non-business nature of these fishing trips, and the Court finds that section 274 is not made inapplicable just because the government arguably overstates its case by labeling the trips as both entertainment and recreation. Second, while section 274 may not be applicable to travel expenses, it is not for this Court to now make a decision regarding how much of the expenses at issue were travel expenses nor for it to label all of the costs associated with the fishing trips as travel. And third, Townsend argues that it is not seeking a deduction and thus section 274 does not apply. This manner of looking at the statute is flawed. While it is true that Townsend is not seeking a deduction, sections 132, 162 and 274 are all relevant because they address Townsend employee's ability to make a deduction of the fishing trip expenses. The proper way to view the matter is to shift the viewpoint and assume that Townsend employees had paid for the fishing trips, and question whether they could have taken the deduction. If Town-

send employees had paid for the trips and been able to deduct the cost of the trips from their gross income, then the costs paid by the employer are not wages and therefore not subject to the employment tax assessments made by the IRS. For this reason, all three tax code sections are relevant, and are important in analyzing whether the cost of the fishing trips should constitute wages and whether Townsend should be subject to the employment tax assessments.

 Assuming for purposes of this motion that Townsend can show the fishing trips constitute ordinary and necessary business travel expenses, a material issue of fact remains regarding whether Townsend can meet the heightened standard set by section 274.

In *Rowell v. Commissioner*, 884 F.2d 1085, 1088 (8th Cir.1989), the Court assumed that a lawyer and tax returner's expenses for entertaining associates on fishing trips to Canada and at a lake cabin in Arkansas were "ordinary and necessary" under section 162. However, the Eighth Circuit went on to hold that the taxpayer failed to show section 274's requirements were met as the taxpayer could not show with appropriate evidence these expenses were directly related, or associated with, the active conduct of his trade or business. *Id.* The taxpayer did not show any business discussions took place at either place, and admittedly was "usually not even present when clients used the cabin." *Id.*

In this case, Townsend was not sending clients on paid fishing trips just to treat them well, create good-will, and keep their business. This was not a situation where business conversations were left to complete happenstance, where the important leaders of the company were noticeably absent. A material issue of fact remains whether the fishing trip expenses were directly related to, *or associated with,* the active conduct of Townsend's business. At trial, Townsend will need to provide adequate records and sufficient evidence pursuant to 26 U.S.C. section 274(d)(4)(C) to substantiate the business purpose of the expense.

## III. CONCLUSION

For the above stated reasons, defendant's motion for summary judgment is denied.

IT IS SO ORDERED.