T.C. Memo. 1999-343

UNITED STATES TAX COURT

MICHAEL F. LAMBAISO AND JODY D. LAMBAISO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11489-98.                    Filed October 14, 1999.

Mario A. Venditti, for petitioners.

Dustin M. Starbuck, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge: Respondent determined the following deficiencies and accuracy-related penalties with respect to petitioners' Federal income taxes:

|       |            | Accuracy-Related Penalty |
| Year  | Deficiency | Sec. 6662                |
|-------|------------|--------------------------|
| 1991  | $600       | $120                     |
| 1992  | 20,285     | 4,057                    |
| 1993  | 20,919     | 4,170                    |

Following concessions by each party, the primary issue for decision is whether petitioners understated their 1991, 1992, and 1993 income by $2,165, $69,187, and $54,661, respectively. Resolution of this issue turns upon the correctness of respondent's revenue agent's use of the markup method to reconstruct the gross sales of alcoholic beverages of a bar/restaurant (Classic Pub) in Virginia Beach, Virginia, operated by Classic Pub, Inc., an electing S corporation, during the 3 years in question. Petitioners owned 28.98 percent of Classic Pub, Inc.'s stock in 1991 and all of its stock in 1992 and 1993.

In computing Classic Pub's gross sales of alcoholic beverages, the revenue agent first determined the potential number of drinks that could be sold from the amount of liquor available for consumption. Petitioners agree with the revenue agent's computation of Classic Pub's potential gross sales of alcoholic beverages before an allowance for drinks sold at discount prices, as well as his computation for spillage, breakage/waste, and theft of alcoholic beverages. However, they posit that (1) the revenue agent arbitrarily and erroneously used the markup method to reconstruct Classic Pub's income for the years in issue, and (2)

the revenue agent erred in computing the amount of sales of alcoholic beverages sold at discounted prices during "happy hours".

The other remaining issues are (1) whether petitioners are entitled to deduct 1991 unreimbursed automobile expenses allegedly incurred in connection with Classic Pub's operation, and (2) whether petitioners are liable for the section 6662(a) accuracy-related penalty for 1991, 1992, and 1993.

All section references are to the Internal Revenue Code in effect for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

### Background

At the time Michael F. and Jody D. Lambaiso (petitioners), husband and wife, filed their petition, they resided in Virginia Beach, Virginia. They filed joint Federal income tax returns for all years in issue.

### Classic Pub

Classic Pub, Inc. is a Virginia corporation. In 1990, it elected S corporation status for Federal tax purposes;

consequently, its income and losses passed through to its shareholders during each of the years at issue.

Michael Lambaiso (petitioner) owned 200 shares of Classic Pub, Inc. stock, while Jenro and Evelyn Lambaiso, petitioner's parents, each owned 400 shares. On November 22, 1991, petitioners purchased Jenro and Evelyn Lambaiso's 800 shares of Classic Pub, Inc. stock. Accordingly, the parties have stipulated that the income and losses from Classic Pub should be allocated to petitioners as 28.98 percent for 1990, 100 percent for 1991, and 100 percent for 1992.

Classic Pub was licensed to serve alcohol by the Virginia Alcoholic Beverage Control Board (VABCB). It operated 16 hours a day, from 10 a.m. to 2 a.m., 7 days a week. Classic Pub ran some form of discounted beverage specials each day of the week. The greatest number of discounted beverage sales occurred during the Wednesday and Friday night "happy hours" from 7 p.m. to 9 p.m. It had a maximum seating capacity of 144 persons.[1] Classic Pub usually had two bartenders tending the bar at any given time and a "bar back" person in order to relieve the bartenders from miscellaneous tasks. Sales were rung up on the bar/restaurant's cash register.

Classic Pub submitted Mixed Beverage Annual Review (MBAR) reports to VABCB, indicating the dollar amounts of its sales of

---

[1] During the years at issue, the actual number of seats was for 130 persons.

food, mixed alcoholic beverages (mixed drinks), beer, and wine. Petitioners recorded Classic Pub's sales of food, beer, wine, and mixed drinks in handwritten monthly sales journals. These monthly sales journals were provided to petitioners' accountant, who prepared monthly profit and loss statements.

Tax Returns

Petitioners filed joint Federal income tax returns for the years in issue reporting the following:

| Year | Wages | Classic Pub Sch. E Loss | Taxable Income |
|------|-------|-------------------------|----------------|
| 1991 | $31,119 | [1]$6,673 | $10,024 |
| 1992 | 30,200 | 3,104 | 20,471 |
| 1993 | 37,800 | [2]23,056 | 41,507 |

During these years, Classic Pub, Inc. filed U.S. Income Tax Returns for an S Corporation (Forms 1120S), reporting the following:

| Year | Gross Sales | Cost of Goods Sold | Total Income | Total Deductions | Ordinary Income (Loss) |
|------|-------------|--------------------|--------------|--------------------|------------------------|
| 1991 | $294,214 | $147,167 | $147,276 | $180,643 | [1]($33,367) |
| 1992 | 403,214 | 228,603 | 175,076 | 171,972 | 3,104 |
| 1993 | 414,649 | 203,864 | 226,633 | 205,677 | [2]20,956 |

[1] For 1991, petitioners reported 20 percent of Classic Pub, Inc.'s losses. The record does not reveal why petitioners reported 20 percent rather than 28.98 percent of Classic Pub Inc.'s losses.
[2] The record does not reveal why for 1993 petitioners reported $23,056 of income, rather than $20,956, as reflected on the K-1 from Classic Pub, Inc.

These amounts were based upon the bar/restaurant's monthly profit and loss statements of income and expenses, which, in turn, were based upon Classic Pub's handwritten sales journals.

The Audit and Respondent's Reconstruction of Gross Sales

Revenue Agent William Bixler was assigned to audit petitioners' 1991, 1992, and 1993 tax years. During that audit, he discovered that for 1991 Classic Pub's monthly gross sales reported on its MBAR were less than the State average for similar establishments. Further investigation by Revenue Agent Bixler revealed that Classic Pub, Inc. reported differing amounts of gross sales on its Federal income tax returns, MBARs, State sales tax returns, and profit and loss statements, and that none of the reported gross sales were consistent with Classic Pub's daily sales journals. The varying amounts of gross sales as reported in these documents are reflected in the following table:

Documents on Which Gross Sales Were Reported

| Year | Form 1120S | MBAR | State Sales Tax Return | Profit & Loss Statement | Monthly Journals Sales Including 9% Sales Tax | Sales Without 9% Sales Tax |
|---|---|---|---|---|---|---|
| 1991 | $294,214 | $313,667 | $296,132 | $291,656 | $314,682 | $288,699 |
| 1992 | 403,213 | 418,213 | 388,387 | 400,249 | 416,928 | 382,503 |
| 1993 | 414,649 | 441,717 | --- | 414,649 | --- | --- |

Because of the lack of internal controls for income reporting purposes and the inconsistencies between Classic Pub, Inc.'s Forms 1120S, MBARs, State sales tax returns, and profit and loss statements, Revenue Agent Bixler decided to reconstruct Classic Pub's sales of mixed drinks, beer, and wine. In doing so, he employed an indirect method to determine Classic Pub's gross sales, utilizing information and calculations provided to him by petitioners, including Classic Pub's purchases of alcohol, prices

and content of mixed drinks, beer, and wine, happy hour and promotional prices, and hours of operation.[2] Revenue Agent Bixler subsequently subtracted the gross sales reported on Classic Pub Inc.'s tax returns from the figures he determined Classic Pub, Inc. should have reported on the returns; the difference represented Classic Pub's understated sales for each year in issue. Specifically, Revenue Agent Bixler computed Classic Pub's total gross sales of mixed drinks for 1992 and 1993 by: (1) Determining the potential number of drinks that could be sold from the amount of liquor available for consumption based upon Classic Pub's documented liquor purchases; (2) reducing the potential number of drinks sold by 10 percent to allow for spillage; (3) multiplying the adjusted potential number of drinks sold by Classic Pub's published price list in a ratio of 69 percent for the lower day prices and 31 percent for the higher evening prices (the lower day prices were in effect for 11 of Classic Pub's 16 hours of operation while the higher evening prices were in effect for the remaining hours of operation) to arrive at tentative gross sales; (4) increasing the tentative gross sales to reflect beverages that were sold for an extra charge; (5) reducing the tentative gross sales by 20 percent to account for discounted mixed drink prices (happy hour

_____

[2]    Revenue Agent Bixler considered the entire week's discounted beverage prices (rather than solely the Wednesday and Friday happy hours) in formulating a discount allowance for mixed drinks, wine, and beer.

and other drink specials); and (6) subtracting an additional 6 percent to account for losses due to theft. Using this method, he calculated that Classic Pub's gross sales from mixed drink sales for 1992 and 1993 were understated by $21,888 and $28,313, respectively. (Step (5) of his computation is at issue herein.)

Revenue Agent Bixler reconstructed the gross sales of Classic Pub's beer and wine in a manner similar to his reconstruction of mixed drink sales, with a few modifications.[3] He reduced the tentative gross sales by 10 percent to account for discounted wine and beer prices. Utilizing this method, he calculated that Classic Pub's income from beer and wine sales for 1991, 1992, and 1993, was understated by $6,361, $33,257, and $38,147, respectively.

In determining an appropriate discount to apply to gross sales for mixed drinks, wine, and beer sold at discount prices, Revenue Agent Bixler discovered that in VABCB's audits of bars/restaurants, VABCB discounted drink prices by reducing gross sales by 5 percent.

---

[3] This reconstruction involved: (1) Determining the potential amount of beer and wine that could be sold based upon Classic Pub's documented purchases of beer and wine; (2) reducing the potential draft beer and wine sold by 10 percent to allow for spillage, and bottled beer by 5 percent for breakage; (3) multiplying the adjusted potential amount sold by Classic Pub's published prices in a ratio of 69 percent for the lower day prices and 31 percent for the higher evening prices to arrive at a tentative gross sales figure; (4) reducing the tentative gross sales by 10 percent to account for discounted wine and beer prices (happy hour and other drink specials); and (5) subtracting an additional 6 percent to account for losses due to theft. (Step (4) of his computation is at issue.)

Initially, he relied upon VACBC's 5-percent allowance in reconstructing the gross sales of Classic Pub's mixed drinks, beer, and wine. However, after learning from petitioners that Classic Pub ran more discounted drink specials than an average bar/restaurant, he raised the allowance to 20 percent for discounted mixed drinks, and 10 percent for discounted beer and wine sales.

In light of Classic Pub, Inc.'s status as an S corporation, respondent determined that Classic Pub's understatement of mixed drinks, beer, and wine sales for the years in issue flowed through to petitioners as unreported taxable income as follows:

|  | 1991 | 1992 | 1993 |
|---|---|---|---|
| Classic Pub's income on Form 1120 | ($33,367) | $3,104 | $20,956 |
| Classic Pub's mixed drink understatement | --- | 21,888 | 28,313 |
| Classic Pub's beer & wine understatement | 6,361 | 33,257 | 38,147 |
| Adjustments/ concessions | 11,449 | 14,042 | (9,699) |
| Corrected income/loss available for distribution | (15,557) | 72,291 | 77,717 |
| Allocation of income/losses | 28.98% | 100% | 100% |
| Corrected Classic Pub income/loss distributed to petitioners | (4,508) | 72,291 | 77,717 |
| Income/losses from Classic Pub reported on Form 1040 | (6,673) | 3,104 | 23,056 |
| Petitioners' understatement | 2,165 | 69,187 | 54,661 |

Automobile Expenses

Petitioners maintain that they are entitled to deduct $1,581 in unreimbursed automobile expenses incurred during 1991 in connection with Classic Pub's operation. These expenses were not claimed on their tax return.

Notice of Deficiency

In the notice of deficiency mailed to petitioners regarding their 1991, 1992, and 1993 tax years, respondent revised petitioners' allowable losses and income from Classic Pub, as described above. Respondent also determined a section 6662(a) accuracy-related penalty for each of the years in issue.

OPINION

Issue 1. Determination of Classic Pub's Gross Sales

The primary issue before us is whether petitioners had unreported income arising from Classic Pub during the years in issue. In resolving this issue, we must determine whether Revenue Agent Bixler's use of the percentage markup method in reconstructing Classic Pub's gross sales was proper and whether discounts[4] he applied in computing the amount of sales of discounted mixed drinks, wine, and beer were correct.

---

[4] A higher discount percentage for items sold at discounted prices benefits petitioners because it results in lower total gross sales.

Section 6001 requires taxpayers to maintain adequate records to determine their correct tax liabilities. Absent adequate records, or if the records that are kept do not accurately reflect income, the Commissioner may determine the existence and amount of a taxpayer's income by using any method that clearly reflects income.[5] Sec. 446(b); United States v. Johnson, 319 U.S. 503 (1943); Burka v. Commissioner, 179 F.2d 483 (4th Cir. 1950). Petitioners bear the burden to prove that respondent's method does not clearly reflect income. Rule 142(a); see sec. 446.

The indirect method used to calculate income must be reasonable. See, e.g., Holland v. United States, 348 U.S. 121 (1954). The percentage markup method is well recognized as a reasonable means of reconstructing income, see Bollella v. Commissioner, 374 F.2d 96 (6th Cir. 1967), affg. T.C. Memo. 1965-162, particularly when cash businesses are involved, see Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Edgmon v. Commissioner, T.C. Memo. 1993-486. Pursuant to this method, gross sales are determined by adding a predetermined percentage to cost of goods sold. See, e.g., Cebollero v. Commissioner, 967 F.2d 986 (4th Cir. 1992), affg. T.C. Memo. 1990-

---

[5] Even if a taxpayer's books and records appear adequate, the Commissioner may test the adequacy of the information contained therein by any reasonable method which properly reflects the taxpayer's income. See, e.g., Michas v. Commissioner, T.C. Memo. 1992-161.

618; <u>Bernstein v. Commissioner</u>, 267 F.2d 879, 880 (5th Cir. 1959), affg. T.C. Memo. 1956-260.

Because Classic Pub's records reflected inconsistent amounts of gross sales for the years in issue, Revenue Agent Bixler reasonably and justifiably reconstructed the bar/restaurant's gross receipts using a form of the percentage markup method. See, e.g., <u>Rungrangsi v. Commissioner</u>, T.C. Memo. 1998-391; <u>DiLando v. Commissioner</u>, T.C. Memo. 1975-243; <u>Jurkiewicz v. Commissioner</u>, T.C. Memo. 1955-318. In performing this reconstruction, he used petitioners' own records and calculations regarding liquor purchases, prices, and quantities. See, e.g., <u>Gasper v. Commissioner</u>, 225 F.2d 284 (6th Cir. 1955). Petitioners failed to present any competent evidence that would cause us to question Revenue Agent Bixler's reconstruction.

We are unpersuaded by any of petitioners' arguments.[6]
Petitioners argue that the notice of deficiency was arbitrary
because of Revenue Agent Bixler's purported inaccurate conclusions
about Classic Pub's business and record keeping. We disagree. Not
only did petitioners fail to prove that Revenue Agent Bixler's
conclusions (which are the basis of respondent's determinations)
are arbitrary, but on the basis of the record before us, we are
satisfied that they are "reasonable in light of all surrounding
facts and circumstances". See, e.g., Schroeder v. Commissioner, 40
T.C. 30, 33 (1963). We found Revenue Agent Bixler's testimony
credible. We therefore conclude that the reconstruction of Classic
Pub's income through the use of the percentage markup method was
proper and that the allowance for alcoholic beverages, wine, and
beer sold at discount prices was realistic.

---

[6] We mention two additional arguments made by
petitioners. First, petitioners contend that they overstated
Classic Pub's 1991 and 1992 gross sales (on the Forms 1120S) by
erroneously including State sales tax. Although respondent
acknowledges that, for income tax purposes, State sales tax
should not be includable in gross sales, petitioners have not
established that they actually overstated Classic Pub's gross
sales by including State sales tax. Petitioners failed to
reconcile the amounts of State sales tax allegedly included in
reported gross sales with the stipulated amounts reflected in
Classic Pub's various records.

Moreover, petitioners posit that two bartenders can pour
2,880 shots of liquor during a 2-hour period. In attempting to
prove this point, petitioners played a videotape (that they
prepared the night before trial) for the Court, in which two
Classic Pub bartenders poured shots of liquor. However, no
evidence was presented as to how many shots of discounted liquor
were actually poured and served on any given night.

Petitioner testified that based upon an examination of Classic Pub's cash register tapes, the bar/restaurant sold an average of 700 drinks/shots during the Wednesday and Friday happy hours. However, petitioners neither introduced the cash register tapes into evidence nor quantified how selling 700 drinks/shots during a Wednesday or Friday happy hour would alter the reasonableness of respondent's reduction for discounted mixed beverage sales.

In sum, we sustain respondent's use of the percentage markup method and respondent's determination of a 20-percent discount with regard to Classic Pub's discounted mixed drink sales and a 10-percent discount for discounted beer and wine sales. Petitioners offered no reliable evidence to contradict respondent's determinations. We conclude that Classic Pub's gross sales of mixed drinks during 1992 and 1993 were understated by $21,888 and $28,313, respectively, and that its gross sales of beer and wine during 1991, 1992, and 1993, were understated by $6,361, $33,257, and $38,147, respectively. Consequently, we hold that petitioners understated their 1991, 1992, and 1993 taxable income by $2,165, $69,187, and $54,661, respectively.

Issue 2. Business Automobile Expenses

The next issue is whether petitioners are entitled to deduct $1,581 of unreimbursed automobile expenses they purportedly incurred during 1991 in operating Classic Pub.

Deductions are a matter of legislative grace. See New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers bear the burden of establishing that they are entitled to the claimed deductions. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933). This includes the burden of substantiating the amount and purpose of the item claimed. See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

Petitioners failed to substantiate the amount or business purpose of the automobile expenses. The only evidence presented was a list of automobile expenses prepared by petitioners' counsel on the basis of petitioner's memory and not prepared contemporaneously with the use of the automobile. Accordingly, we sustain respondent on this issue.

Issue 3.  Section 6662(a) Accuracy-Related Penalty

The final issue is whether petitioners are liable for the section 6662(a) accuracy-related penalties for the years in issue for negligence or disregard of rules or regulations or substantial understatement of tax. Petitioners generally assert a reasonable cause defense.

Section 6662 imposes a penalty equal to 20 percent of the amount of the underpayment attributable to negligence or disregard of rules or regulations or substantial understatement of tax. "Negligence" means any failure to make a reasonable attempt to

comply with the provisions of the Internal Revenue Code, and "disregard" means any careless, reckless, or intentional disregard. See sec. 6662(c). A substantial understatement of tax means an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. See sec. 6662(d)(1)(A).

No accuracy-related penalty is imposed with respect to any portion of the understatement as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1).

Petitioners failed to establish that they were not negligent in preparing their returns. In fact, the record establishes that petitioners failed to maintain adequate books and records for their bar/restaurant. Revenue Agent Bixler's reconstruction establishes that Classic Pub's books and records were unreliable and understated its income.

In sum, we hold that petitioners failed to exercise reasonable care both in reporting Classic Pub's gross sales and in ensuring the accuracy of their individual tax returns. Accordingly, we sustain the section 6662(a) accuracy-related penalties with respect to the years in issue.

In reaching our conclusion, we have considered all of petitioners' arguments and, to the extent not discussed, conclude that each of them is without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.