Nick **KIKALOS** and Helen
Kikalos, Plaintiffs,

v.

**UNITED STATES of America,**
Defendant.

**No. 2:98 CV 618.**

United States District Court,
N.D. Indiana,
Hammond Division.

Jan. 12, 2003.

Donald E Schlyer, Schlyer & Associates
PC, Elizabeth A Deremiah, Ruman Clements Tobin and Holub PC, Roger A Weitgenant, David Ronald Novak, Schlyer &
Associates PC, Merrillville, IN, Ralph M

Bernstein PHV, Ralph M Bernstein and Associates, Chicago, IL, for Plaintiff.

Carol A Davilo, US Attorney's Office, Hammond, IN, Craig Weaver, Jennifer Gazaille Cohen, Stacy Hallett, Tax Division, US Department of Justice, Washington, DC, for Defendant.

## ORDER

SIMON, District Judge.

This matter is presently before the Court on the Motion *in Limine* (Docket No. 50) of the Defendant United States of America to bar Plaintiffs from offering evidence of their income under any indirect method, other than the percentage markup method. The Court now rules as follows.

During the 1988 and 1989 taxable years, Plaintiffs owned three liquor stores in Hammond, Indiana. The Plaintiffs almost exclusively dealt in cash with respect to the sale of beer, wine, liquor, and cigarettes from their stores. In addition, the Plaintiffs paid many expenses, such as their payroll and purchases of beer and other goods with cash.

Nick Kikalos was responsible for the books of all three stores. At the end of each day Mr. Kikalos would receive a bag from each store containing receipts which, among other things, included the cash register tapes (also known as "Z tapes") from the stores. The Z tapes from these store registers would have allowed for an accurate calculation of the Kikaloses' gross income. However, after entering the information in his log books, Mr. Kikalos threw away all of the Z tapes.

When the IRS began investigating the Plaintiffs' returns for 1988 and 1989, it found that Plaintiffs' books and records were not adequate to determine the Plaintiffs' income. As a result of the Plaintiffs' failure to maintain the underlying data to support a determination of their income, the IRS was forced to use an indirect method, in this case the percentage markup method, to approximate the Plaintiffs' income for the years at issue. An indirect method is a method by which the IRS estimates a taxpayer's income. Other methods that can be used to estimate a taxpayer's income when inadequate records exist include the bank deposits method and the net worth method.

Plaintiffs paid the assessment of the IRS in full and now sue for a refund. The case was originally assigned to the Honorable James T. Moody. In deciding the Defendant's Motion for Partial Summary Judgment, Judge Moody found that the Plaintiffs had not maintained adequate books and records to determine their income. To briefly recap Judge Moody's decision, it is undisputed that a taxpayer must maintain accounting records adequate to enable a taxpayer to file a correct tax return. *See* 26 U.S.C. § 6001 ("Every person liable for any tax imposed by this title...shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe..."). These records must include such supporting documentation as will substantiate the amounts reported by the taxpayer. *See* Income Tax Regs. § 1.446–1(a)(4) ("Accounting records include the taxpayer's regular books of account and such other records and data as may be necessary to support the entries on his books of account and on his return..."). This Court found that because Plaintiffs had not maintained the Z tapes to support the entries in their log book, their records were, as a matter of law, inadequate.

The United States now submits that any method other than the indirect method of proof employed by the IRS, in this case the percentage markup method, is not relevant to the issues for trial. This Court agrees.

The Court begins its analysis where Judge Moody left off. It is the responsibility of every tax payer to maintain accounting records which enable him or her to file a correct tax return. *See* 26 U.S.C. § 6001; Income Tax Regs. § 1.466–1. Because the Kikaloses' books and records were inadequate, the Commissioner was permitted to use such methods as in his opinion clearly reflected that income. 26 U.S.C. § 446(b) ("If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income")..

█ Courts routinely accord deference to the Commissioner in the reconstruction of a taxpayer's income. *See Zuhone v. Commissioner*, 883 F.2d 1317, 1326 (7th Cir.1989) (noting that "the Commissioner may use any reasonable method of calculation where, as in this case, the taxpayer fails to produce or maintain adequate records from which actual income may be ascertained"); *Mendelson v. Commissioner of Internal Revenue*, 305 F.2d 519 (7th Cir.1962) (agreeing with Tax Court that method was not without rational foundation and produced result that was substantially correct). Other Circuits have stated that the "court must accept the Commissioner's method of reconstructing income so long as it is rationally based." *Caulfield v. Commissioner of Internal Revenue*, 33 F.3d 991, 993 (8th Cir.1994); *Rowell v. Commissioner of Internal Revenue*, 884 F.2d 1085, 1087 (8th Cir.1989)(same). This makes sense because "the taxpayer has more readily available to him the correct facts and figures." *Psaty v. United States*, 442 F.2d 1154, 1160 (3rd Cir.1971). The Commissioner's assessment is expected to be rational, not flawless. *Rowell*, 884 F.2d at 1087–88. This deference flows from the Internal Revenue Code, which states that where income cannot be clearly reflected, the Commissioner can use any method that in his opinion reflects the income.

█ In the ordinary case, the determination of taxable income by the Commissioner is presumptively correct and the court will not look behind an assessment to evaluate the procedure and evidence used in making the assessment. *Pittman v. Commissioner of Internal Revenue*, 100 F.3d 1308, 1313 (7th Cir.1996). Rather, a court will conduct a *de novo* review of the correctness of the assessment, imposing the risk of non-persuasion on the taxpayer. *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir.1987). Thus, this presumption of correctness places the burden of persuasion on the taxpayer to show that the tax imposed is "wrong, and wrong by some amount." *United States v. Schroeder*, 900 F.2d 1144, 1148 (7th Cir.1990)(citing *Ruth* ); *see also Coleman v. United States*, 704 F.2d 326, 329 (6th Cir.1983) (Commissioner's estimates "will be accorded the full presumption of correctness, subject to being overturned only upon proof by the taxpayer that he is entitled to a specific refund").

As this Court previously held, there are no adequate records from which the Plaintiffs' income can be calculated because the Plaintiffs dealt strictly in cash, and the records (the cash register receipts) have been destroyed. As the Fifth Circuit has stated, while the absence of adequate records "does not give the Commissioner carte blanche for imposing Draconian absolutes," such absence does weaken any critique of the Commissioner's methodology. *Webb v. Commissioner of Internal Revenue*, 394 F.2d 366, 373 (5th Cir.1968). Indirect methods are by their very nature estimates and courts reject the notion that the IRS should have checked their calculations by other methods. *Id.; Rowell*, 884 F.2d at 1088.

Arithmetic precision was originally and exclusively in the hands of the Kikaloses. As in *Webb*, the Kikaloses did not have to add or subtract; rather they had simply to keep papers and data for others to do the work. 394 F.2d at 373. The consequences of this duty are no less applicable in a case where Plaintiffs have paid the tax and now seek a refund. Having defaulted in this duty, Plaintiffs cannot, in essence, "frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination." *Id.*

To find otherwise would render Section 6001 meaningless. If the Court were to accept Plaintiffs' argument that, despite their burden to maintain adequate records, in a refund action they can establish their income by any indirect method of their choice would in essence mean the government could be defrauded with impunity. Plaintiffs' interpretation would allow a taxpayer to maintain a seemingly accurate record of income, destroy other evidence of the source and amount of income, and then argue that what they have deposited in a bank for example is nonetheless a true reflection of their income. Such an interpretation would turn the income tax system on its head. It would enable taxpayers to pay the assessment and then prove their income by estimate, with no source data to support it. In our view such an approach would render meaningless those provisions of the Internal Revenue Code which require a taxpayer to keep adequate records and in the absence of adequate records gives that choice of indirect methods necessary to estimate the taxpayer's income to the Commissioner and not the taxpayer.

Thus, the ultimate burden on the Plaintiffs, as taxpayers seeking a refund, is not to show what the Commissioner's assessment could have been had he employed other indirect methods to estimate the Plaintiffs' income. Instead, the burden on the Plaintiffs is to show that the Commissioner's assessment is wrong regardless of the method that was employed. *Webb,* 394 F.2d at 372 ("It is immaterial whether the Commissioner proceeded upon a wrong theory in determining the deficiency, and the taxpayer has the burden of showing that the assessment is wrong on any proper theory"); *Bernstein v. Commissioner of Internal Revenue,* 267 F.2d 879, 881 (5th Cir.1959) (same). To do so Plaintiffs must offer proof that the assessment is wrong and wrong by some amount.

The Court finds that other indirect methods of estimating what the plaintiff's income are not relevant to that burden. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Other indirect methods tend only to show that the Plaintiffs' income could have been estimated in different ways with different results. It does not tend to prove or disprove that the assessment resulting from the method the government chose is wrong and wrong by some amount. Thus, the Court finds that the Kikaloses' determinations of their income by other indirect methods will not assist the trier of fact in determining whether there was an overpayment and by how much.

Accordingly, because the Court finds that any evidence of the Kikaloses' income under other indirect methods are not relevant to assisting the trier of fact, Defendant's Motion *in Limine* (Docket No. 50) is GRANTED.

**SO ORDERED**